UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REBECCA L. LINT,

                          Plaintiff,

                V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____

**REPORT AND
RECOMMENDATION**

07-CV-479
(NAM/VEB)

## I. INTRODUCTION

In April of 2005, Plaintiff Rebecca Lint filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since April 1, 2005, primarily due to bipolar disorder, depression, anxiety, panic attacks, and other related ailments.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorney, Stephen J. Mastaitis, Esq., commenced this action on May 3, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

For the reasons set forth below, this Court finds no reversible error and finds that

substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI benefits on April 5, 2005, alleging that she had been unable to work since April 1, 2005. (T[1] at 12).   The application was denied on August 8, 2005. (T at 12, 20-24).   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 10, 2005. (T at 25-26).  On February 21, 2006, Plaintiff appeared with counsel at a hearing before ALJ Douglas Abruzzo.  (T at 274-316).

On June 26, 2006, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 12-17).   ALJ Abruzzo's decision became the Commissioner's final decision on March 1, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 5-7).

Plaintiff commenced this action on May 3, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on October 19, 2007. (Docket No. 9).  The Commissioner filed a Brief in opposition on December 3, 2007. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.7).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work

4

experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n. 5; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 1, 2005.   (T at 14).   The ALJ found that Plaintiff has the following "severe" impairments: Bipolar disorder (severe alone) and combination of asthma and back pain. (T at 14).   However, the ALJ concluded that Plaintiff's impairments did not meet or equal

the level of severity of any disabling condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations").  (T at 14).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to perform "simple repetitive tasks in a non production or quota based system, make simple work related decisions, deal with a few changes in the work setting, and work with occasional interaction with supervisors, coworkers and the public at the medium exertional level." (T at 15).

The ALJ concluded that Plaintiff could not perform her past relevant work as a restaurant worker or photographer because of the amount of public contact.  (T at 16).  However, the ALJ found that given Plaintiff's residual functional capacity, age, work experience and education, there are a significant number of jobs that exist in the national economy that she can perform.  (T at 16-17).  Therefore, the ALJ determined that Plaintiff is not under a disability.  (T at 17).

As noted above, the ALJ's decision became the Commissioner's final decision on March 1, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

### 2.    Review of Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of her position.  First, Plaintiff contends that her severe mental impairments meet or equal several impairments identified in § 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (commonly referred to as "the Listings").  Second, she argues that the ALJ improperly failed to give controlling weight to the assessments of her treating health professionals.  Third, Plaintiff asserts that the ALJ improperly discounted her subjective complaints of disabling conditions.  This Court will address each argument

in turn.

##### a.    Determination Regarding the Listings

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

Where, as here, the disability claim is based upon one or more of the impairments contained in the Listings, the ALJ is required to articulate a sufficient rationale in support of his decision to find or not to find a listed impairment. *Berry*, 675 F.2d at 469; *see also Hendricks v. Comm'r of Soc. Security*, 452 F.Supp.2d 194, 198-99 (W.D.N.Y.2006); *Brown ex rel. S.W. v. Astrue*, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008) ("Where the claimant's symptoms as described in the medical evidence appear to

match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.")(quoting *Giles v. Chater*, No. 95-CV-0010E, 1996 WL 116188, at *5 (W.D.N.Y. Jan.8, 1996)).

In this case, the ALJ recognized and employed the special technique, concluding that Plaintiff had a medically determinable mental impairment, *i.e.* bipolar disorder, and "moderate limitation in her ability to perform her activities of daily living, maintain social functioning, [and] concentrate and persist at tasks." (T at 15).  The ALJ noted "no documented episodes of deterioration or decompensation of extended duration." (T at 15). The ALJ did not specifically address particular Listings impairments as part of his analysis, but his overall analysis makes clear and supports his conclusion that Plaintiff did not possess the requisite limitations to meet or equal any of the impairments.

Plaintiff argues that her impairments meet or equal § 12.03 of the Listings (Schizophrenic, Delusional (Paranoid), Schizoaffective, and Other Psychotic Disorders) because she has medically documented persistence of emotional withdrawal and/or isolation, combined with a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.03 (A)(4)&(B)(1-3).

Plaintiff also contends that she satisfies § 12.04 of the Listings (Mood Disorders) because she has been diagnosed with bipolar disorder and suffers from a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.04 (A)(3)&(B)(1-3).

Plaintiff asserts that her impairments meet or equal § 12.06 of the Listings (Anxiety Disorders) because she experiences recurrent and persistent anxiety and isolation and persistent irrational fear, combined with a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.06 (A)(1-3)&(B)(1-3).

Lastly, Plaintiff alleges that she satisfies § 12.08 of the Listings (Personality Disorders) due to maladaptive patterns of behavior, combined with persistent disturbances of mood or affect, intense and unstable interpersonal relationships and impulsive and exploitative behavior. Plaintiff contends that these problems are manifested via a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.08 (A)(4,6)&(B)(1-3).

As evident from the foregoing summary, to establish that her impairments meet or equal one or more of the Listings, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." *Paratore v. Comm'r of*

9

*Social Security Admin.*, No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Plaintiff clearly satisfies the Subsection (A) criteria with respect to §§ 12.04 and 12.08 of the Listings.[3] Dr. John Carosso, a licensed psychologist, diagnosed Plaintiff as suffering from "Bipolar II Disorder" and "Panic Disorder with Agoraphobia." (T at 137). These mental impairments have been associated with manic and depressive symptoms, persistent irrational fearfulness, mood disturbances, and limited social interaction. (T at 157).

Thus, the key inquiry is the effect Plaintiff's impairments have with regard to the Subsection (B) criteria. Plaintiff will only be disabled if her impairments are so marked that they preclude her from performing basic work activities.  *See Armstrong v. Comm 'r of Social Sec.*, No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

The ALJ noted no evidence of repeated episodes of decompensation and Plaintiff does not appear to dispute this point.  As such, the primary point of contention is whether Plaintiff's restrictions with regard to activities of daily living, social functioning, and concentration/persistence/pace are "marked" (as alleged by Plaintiff) or "moderate" (as determined by the ALJ).

This Court's duty is not to decide this question in the first instance, but to determine

---

[3]The evidence does not suggest that Plaintiff meets the Subsection (A) requirements with regard to §§ 12.03 and 12.06 of the Listings.  However, even if those threshold requirements were satisfied, Plaintiff could not satisfy the Subsection (B) requirements with regard to those impairments, for the reasons stated above.

whether the ALJ's position is supported by substantial evidence.  *See Valente*, 733 F.2d at 1041 (noting that District Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review").

For the following reasons, this Court finds that the ALJ's determination was supported by substantial evidence.  Regarding Plaintiff's ability to engage in activities of daily living, Plaintiff testified regarding some limitations in this regard during her depressive periods (T at 302).  The ALJ's finding of "moderate" limitation indicates that he assigned some weight to this testimony.  However, the record establishes that Plaintiff customarily participated in many varied activities of daily living, including caring for her two young children, taking out the trash, cooking, vacuuming and other household chores, grocery shopping, reading, and doing laundry. (T at 72-74).  Plaintiff testified that she enjoys painting and writes short stories as a hobby.  (T at 302).  Thus, this Court finds that substantial evidence supports the ALJ's decision that Plaintiff suffered from moderate, as opposed to marked, impairment in activities of daily living.

"Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." *Bergman v. Sullivan*, CIV 88-513L, 1989 WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989).  Plaintiff complained that she was unable to relate to others and that she felt she would be fired from any job due to missed days, depression, and aggression. (T at 73).  J.Edward Stemple, Plaintiff's treating therapist and a Licensed Clinical Social Worker, noted that Plaintiff had "few friends" and opined that she is "so socially isolated and so socially inept that it's hard to imagine her being able to work

11

in most any situation." (T at 157).  Again, the ALJ's determination that Plaintiff had "moderate" limitations with regard to social functioning indicates that he assigned some weight to this evidence.  Indeed, the ALJ found that Plaintiff could not return to her past relevant work (as a restaurant worker and portrait photographer) because those jobs involved "more than occasional public contact." (T at 16).

The ALJ's conclusion that Plaintiff's social functioning limitations were moderate, as opposed to marked, was supported by the fact that at the time of the hearing, Plaintiff was married and lived with her husband, their two children, her mother-in-law, and her mother-in-law's boyfriend. (T at 281).  Plaintiff had been married for seven years at the time of the hearing and had occasional contact with her mother and father.  (T at 281, 134).  Dr. John Carosso, a licensed psychologist, performed a consultative examination, in which he noted that Plaintiff was "alert," "fully oriented," "engaged with the evaluation process," and presented "as rather intelligent." (T at 135).  Although the ALJ rejected Dr. Carosso's ultimate conclusion as to Plaintiff's overall level of limitation, these clinical findings support the ALJ's determination regarding the extent of Plaintiff's limitations.   In light of this evidence, the ALJ's finding that Plaintiff suffered from only moderate restrictions in social functioning was warranted. *See Paratone v. Comm'r of Soc. Security*, No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

With respect to Plaintiff's ability to maintain concentration, persistence, or pace, Dr. Carosso noted that she had a perfect 30/30 score on the "mini-mental state exam" and was "fully oriented and exhibited adequate immediate short-term memory." (T at 136).  She was able to "repeat a phrase, follow a three-step direction, complete a sentence, and copy a design." (T at 136).  Again, while the ALJ did not accept Dr. Carosso's final conclusion,

12

these clinical findings support the ALJ's determination that Plaintiff only experienced moderate limitations as to her ability to maintain concentration, persistence, or pace.

Lastly, all of the ALJ's findings as to the extent of Plaintiff's limitations were supported by the Mental Residual Functional Capacity Assessment completed by non-examining State Agency psychologist Elizabeth Hoffmann.  (T at 141-56).  Dr. Hoffmann reviewed the medical evidence and concluded  that Plaintiff satisfied the Subsection (A) criteria for § 12.04 of the Listings. (T at 147). However, Dr. Hoffmann found that Plaintiff was not disabled because she was only moderately limited with regard to her activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace. (T at 154).

It is well-settled that an ALJ is entitled to rely upon the opinions of State agency medical and psychological consultants since they are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f) (2). Such reliance is particularly appropriate where, as here, the opinion of the State agency psychologist is supported by the weight of the record evidence. *See Diaz v. Shalala*, 59 F.3d 307, 31 n. 5 (2d Cir.1995); *Provost-Harvey v. Comm'r of Soc. Sec.*, No. 06-CV-1128, 2008 WL 697366, at *6 (N.D.N.Y. Mar. 13, 2008) ("The evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.") .

Accordingly, the Court finds that the ALJ applied the appropriate legal standard and substantial evidence supports the ALJ's determination that Plaintiff's mental impairments did not meet or equal a listed impairment.

### b.    Consideration of Treating Medical Providers' Opinions

13

The Commissioner is required to give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of [claimant's] impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir.1999).

However, not all health care providers are treating sources. A treating source is Plaintiff's "own physician, psychologist, or other acceptable medical source who provides [Plaintiff], or has provided [Plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [Plaintiff]." 20 C.F.R. § 404.1502.

Here, Plaintiff argues that the ALJ should have given controlling weight to the opinions of her treating "mental health professionals," which opinions were memorialized in a letter dated September 15, 2005, and accompanying Witness Statement prepared by J. Edward Stemple, Plaintiff's therapist and social worker. (T at 157-61). As noted above, Mr. Stemple opined that "it's probably fair to say that [Plaintiff] is so socially isolated and so socially inept that it's hard to imagine her being able to work in most any situation." (T at 157). He further concluded that Plaintiff's "depression and anxiety certainly limit productivity of any sort . . . ." (T at 157). Mr. Stemple found a "marked impairment" in Plaintiff's social judgment and categorically stated that she was "unable to work." (T at 158-59).

The ALJ rejected Mr. Stemple's findings. This Court finds no reversible error in that decision. Under the applicable Social Security Regulations, a licensed clinical social worker therapist's opinion is not considered a "medical opinion". *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir.1995); *Corson v. Astrue*, 601 F. Supp.2d 515, 531-32 (W.D.N.Y.

14

2009).

The Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." *Diaz*, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers. Rather, therapists are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." *Id.* (citing 20 C.F.R. § 404.1513(e) (1994)).

Accordingly, because the Regulations do not classify therapists or social workers as either physicians or "other acceptable medical sources," the ALJ was not bound to give Mr. Stemple's opinion controlling weight. *See Velasquez v. Barnhart*, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

The Court is mindful, however, that the ALJ was obligated to give some consideration and weight to Mr. Stemple's opinion in light of his qualifications and familiarity with the Plaintiff. *See Pogozelski v. Barnhart,* No. 03 CV 2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004)(noting that "some weight should still have been accorded to [family counselor's] opinion based on his familiarity and treating relationship with the claimant"); *White v. Comm'r of Soc. Security, 3*02 F.Supp.2d 170, 176 (W.D.N.Y.,2004) ("Although reports of a social worker are not an 'acceptable medical source' under the regulations, . . . the ALJ should have considered [social worker's] records as 'other source'

evidence.").

The Court is satisfied that the ALJ gave the appropriate level of weight to Mr. Stemple's findings.   Specifically, the ALJ appears to have incorporated Mr. Stemple's concerns regarding Plaintiff's social interaction skills by recognizing Plaintiff's limited ability to interact with the public and incorporating that limitation into his residual functional capacity analysis. (T at 16-17).   Moreover, given the record evidence, including the findings of the State Agency psychologist, it was not error for the ALJ to reject Mr. Stemple's opinions regarding the extent of Plaintiff's limitations.   The determination of disability is a matter reserved to the Commissioner and the ALJ is not obligated to accept the assessment of a claimant's treating physician or any other source in that regard. *See* 20 C.F.R. § 404.1527 (e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Plaintiff also suggests that greater weight should have been afforded to the assessment of Dr. John Carosso, the consultative examiner.   Dr. Carosso opined that Plaintiff had "marked" limitations with regard to her ability to carry out instructions, make judgments on simple work-related decisions, interact with the public/co-workers/supervisors, and respond appropriately to routine work setting changes.   (T at 139).

The ALJ rejected Dr. Carosso's ultimate assessment, noting that it was contrary to Dr. Carosso's own clinical findings, which (as described above) indicated that Plaintiff was "relatively intelligent" and able to demonstrate insight, follow directions, and respond appropriately. (T at 15, 135-36).   The ALJ also noted that Dr. Carosso's conclusions regarding Plaintiff's limitations were based principally on her subjective complaints.   (T at 15).   As outlined above, the ALJ incorporated the concerns expressed by Mr. Stemple and

16

by Dr. Carosso with regard to Plaintiff's social interaction limitations into his residual functional capacity finding and his conclusion that Plaintiff could not return to her past relevant work.

Upon consideration of the foregoing, the Court finds no reversible error in the manner in which the ALJ weighed the opinions of the mental health professionals.

### c.   Evaluation of Plaintiff's Credibility

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a credibility determination:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.    Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds Plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff alleges that the ALJ improperly discounted her testimony regarding the limitations imposed by her mental impairments and sleep disorder.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (T at 15).  However, the ALJ further determined that Plaintiff's statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible.  (T at 15).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility

18

assessment to deference. *See Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).

The ALJ reviewed the record evidence, including Plaintiff's treatment history, the clinical findings of her treating professionals and the consultative examiner, and Plaintiff's own testimony.  (T at 14-16).  This Court finds that the ALJ had sufficient evidence on which to base his conclusion that Plaintiff's allegations were not fully credible.  The ALJ adequately articulated his rationale, noting (for example) that Plaintiff attends therapy regularly, testified to a relatively stable marriage, and indicated that she engages in hobbies such as painting and short story writing. (T at 15-16).  The ALJ also noted that Plaintiff's medication had not been changed that often, indicating a relatively stable condition. (T at 15).  With regard to Plaintiff's testimony concerning sleep difficulties, the ALJ noted the possibility of "mild obstructive sleep apnea syndrome," but concluded that there was insufficient evidence to establish a severe impairment related to this issue.[4]

The Court finds that the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. *See e.g. Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

---

[4]Plaintiff alleges that her sleep disorder was confirmed by a post-hearing sleep study.  However, the study simply indicated "*possible* obstructive sleep apnea" with "[m]ild nocturnal hypoxia" (T at 243) (emphasis added), conclusions consistent with the ALJ's assessment.

19

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:  June 19, 2009

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn*, 474 U.S. 140 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d. Cir. 1995); *Wesolak v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); *see also* 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

21

SO ORDERED.

June 19, 2009

Victor E. Bianchini
United States Magistrate Judge